IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF OKLAHOMA

| | | |
|---|---|---|
| DANA S. RAY,<br><br>Plaintiff,<br><br>vs.<br><br>OKLAHOMA HERITAGE HOME CARE, INC., a Domestic for Profit Corporation; and BEVERLY PRESTON, Individually,<br><br>Defendants. | ) | Case Number CIV-11-1452-C |

**MEMORANDUM OPINION AND ORDER**

Plaintiff was hired by Defendants to perform clerical duties in the office of Defendant Oklahoma Heritage Home Care, Inc. ("OHHC"). Plaintiff's employment with OHHC presents a somewhat unusual situation in that she was related to many of her co-workers. Of particular import is the fact that Defendant Preston is Plaintiff's mother. Plaintiff's sister, Twana Ward, was the CEO/President/Owner of Defendant OHHC. Plaintiff's brother, Marvin Preston, was the Chief Financial Officer of Defendant OHHC.

Plaintiff's employment with Defendant OHHC was terminated on August 12, 2011. Following that termination, Plaintiff filed the present action alleging violation of the Americans with Disabilities Act ("ADA"), 42 U.S.C. §§ 12101, et seq.; the Oklahoma Anti-Discrimination Act ("OADA"), 25 Okla. Stat. §§ 1101, et seq.; retaliation in violation of Title VII, 42 U.S.C. §§ 2000e, et seq.; and a state law-based tort claim for intentional infliction of emotional distress. Plaintiff named as Defendants her employer OHHC and the Director of Nursing for OHHC, Defendant Preston. Arguing the undisputed material facts

demonstrate they are entitled to relief on each of Plaintiff's claims, OHHC and Preston each filed motions seeking summary judgment.

**STANDARD OF REVIEW**

Summary judgment is appropriate if the pleadings and affidavits show there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c). "[A] motion for summary judgment should be granted only when the moving party has established the absence of any genuine issue as to a material fact." Mustang Fuel Corp. v. Youngstown Sheet & Tube Co., 561 F.2d 202, 204 (10th Cir. 1977). The movant bears the initial burden of demonstrating the absence of material fact requiring judgment as a matter of law. Celotex Corp. v. Catrett, 477 U.S. 317, 322-23 (1986). A fact is material if it is essential to the proper disposition of the claim. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). If the movant carries this initial burden, the nonmovant must then set forth "specific facts" outside the pleadings and admissible into evidence which would convince a rational trier of fact to find for the nonmovant. Fed. R. Civ. P. 56(e). These specific facts may be shown "by any of the kinds of evidentiary materials listed in Rule 56(c), except the mere pleadings themselves." Celotex, 477 U.S. at 324. Such evidentiary materials include affidavits, deposition transcripts, or specific exhibits. Thomas v. Wichita Coca-Cola Bottling Co., 968 F.2d 1022, 1024 (10th Cir. 1992). "The burden is not an onerous one for the nonmoving party in each case, but does not at any point shift from the nonmovant to the district court." Adler v. Wal-Mart Stores, Inc., 144 F.3d 664, 672 (10th Cir. 1998). All facts and reasonable inferences therefrom are construed

in the light most favorable to the nonmoving party. Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986).

**ANALYSIS**

As noted above, Plaintiff brings multiple claims. In her Complaint, Plaintiff was less than clear regarding which specific claims were brought against which Defendant. To be clear, because Defendant Preston was at most Plaintiff's supervisor, the ADA, OADA, and retaliation claims cannot proceed against her. See Butler v. City of Prairie Village, Kan., 172 F.3d 736, 743 (10th Cir. 1999) (no supervisor liability under the ADA); Haynes v. Williams, 88 F.3d 898, 901 (10th Cir. 1996) (no supervisor liability under Title VII); and Fulton v. People Lease Corp., 2010 OK CIV APP 84, ¶ 18, 241 P.3d 255, 261 (no personal liability under the OADA). Accordingly, to the extent Plaintiff sought to pursue these claims against Defendant Preston, that Defendant is entitled to summary judgment on them.

Turning to Plaintiff's ADA claim against Defendant OHHC, OHHC asserts that Plaintiff was terminated for inappropriate yelling, and lunging and using stabbing gestures as if a knife was in hand toward other staff members. According to Defendant OHHC, on August 12, 2011, Plaintiff, during a conversation with other co-workers, stated that she had stabbed her ex-husband 58 times and killed him. Defendant OHHC also alleges that at that time Plaintiff made the stabbing or lunging motions with her hand. Plaintiff alleges that at this time Defendant Preston came out of her office and yelled, "'[Y]ou need to keep your mouth shut girl', you're crazy' and 'need to take your medication again.'" (Pl's Resp., Dkt. No. 59, at 7.) Following these incidents, Plaintiff's employment was terminated for violating

the employer's policies against threatening or aggressive behavior, and the present action eventually ensued.

To establish a prima facie case of discrimination under the ADA, Plaintiff must show (1) she is a disabled person as that term is defined in the ADA; (2) she is qualified with or without reasonable accommodation to perform the essential functions of her job; and (3) she suffered an adverse employment action on the basis of her disability. Carter v. Pathfinder Energy Svcs., Inc., 662 F.3d 1134, 1142 (10th Cir. 2011). Defendant OHHC alleges that Plaintiff's prima facie case must fail because she can offer no evidence in support of the third element. As Defendant OHHC notes, to satisfy that element Plaintiff must show an adverse employment action which occurred on the basis of a disability. Defendant OHHC argues that there is no evidence that Plaintiff was terminated because of her mother's (Defendant Preston) remarks or otherwise because of her disability. Rather, Defendant OHHC argues, Plaintiff was terminated for violating its policies.

In response, Plaintiff offers a litany of claimed discriminatory acts which occurred during her employment. The vast majority of the issues she now raises as evidence of disability discrimination have never been pleaded or relied upon in discovery. Defendant OHHC argues that neither Plaintiff's Complaint, her Joint Status Report, nor her EEOC charge of discrimination raised discrimination claims on any conduct other than the above-mentioned statement from her mother. As Defendant OHHC notes, the Plaintiff cannot, for the first time in a response to Defendant OHHC's Motion for Summary Judgment, inject new theories of liability absent permission from the Court. Pater v. City of Casper, 646 F.3d

1290, 1299 (10th Cir. 2011); Evans v. McDonald's Corp., 936 F.2d 1087, 1090-91 (10th Cir. 1991). The Court declines Plaintiff's late attempt to amend her claims; therefore, the Court's consideration of Plaintiff's disability claim will focus on discrimination arising from the statements of Defendant Preston.

Plaintiff fails to offer any evidence suggesting that her termination arose from her disability. Rather, Plaintiff's argument focuses solely on the temporal proximity between her mother's statement and her ultimate termination.[*] Of course, also germane to this discussion is the fact that Plaintiff's alleged violation of policy and threatening behavior additionally immediately preceded her termination. Because at this stage the Court must view the undisputed evidence in a light most favorable to Plaintiff, the Court will proceed as if Plaintiff has made her prima facie showing; that is, that her termination arose at least in part from Defendant Preston's statements about her disability.

Once Plaintiff makes a prima facie case, the burden shifts to Defendant to articulate a legitimate non-discriminatory reason for the adverse action. Here, Defendant has met its burden by stating that Plaintiff was terminated for violating policies and making threatening gestures toward co-workers and/or creating an unsafe work environment.

Because Defendant comes forward with a legitimate non-discriminatory reason, the burden shifts back to Plaintiff to demonstrate that that reason is, in fact, pretext for

[*] Plaintiff's mother and sister were also the decision makers who decided to hire Plaintiff. As family members they certainly were aware of Plaintiff's condition at the time they hired her. As will be discussed below, this raises a strong inference that these same decision makers did not find Plaintiff's disability to be a reason to terminate her.

discrimination. Plaintiff attempts to satisfy her burden by demonstrating that none of the other employees who heard her remarks felt threatened. Whether or not the employees felt threatened is not the issue. Each employee agreed that Plaintiff in fact made the stabbing motion. It is Defendant's understanding of Plaintiff's violation of its policy that controls. It is not the Court's job to sit as a super-personnel department and examine the actions of Defendant for their correctness. See Jones v. Barnhart, 349 F.3d 1260, 1267 (10th Cir. 2003). Rather, if Defendant's beliefs were well-founded, even if wrong, then its decision to terminate Plaintiff for violation of its policy was non-discriminatory. Weighing in Defendant OHHC's favor on this point is the fact that the same persons who decided to hire Plaintiff made the decision to terminate her. The Tenth Circuit has held that: "in cases where 'the employee was hired and fired by the same person within a relatively short time span,' there is 'a strong inference that the employer's stated reason for acting against the employee is not pretextual.'" Antonio v. Sygma Network, Inc., 458 F.3d 1177, 1183 (10th Cir. 2006) (quoting Proud v. Stone, 945 F.2d 796, 798 (4th Cir. 1991)) (footnote omitted). While the time between Plaintiff's hiring and firing was longer than many of the cases applying the inference, given the familial relationships involved, the Court finds the concepts behind application of the inference particularly applicable here. This inference, coupled with the undisputed fact that Plaintiff engaged in the behavior for which she was fired, leads the Court to conclude that no reasonable jury could find Plaintiff was terminated because of her disability and Defendant is entitled to summary judgment on Plaintiff's ADA discrimination claim.

To the extent Plaintiff seeks to pursue a claim under the OADA, that claim fails for two reasons. First, Defendant has argued that Plaintiff failed to exhaust administrative remedies prior to bringing the claim in this Court. Plaintiff offers no response to that argument and the Court finds it well-founded. Secondly, Plaintiff's claim under the OADA fails for the reasons noted above in regard to the ADA claim. Consequently, Defendant is entitled to summary judgment on Plaintiff's claims under the OADA.

Plaintiff argues that she was terminated in retaliation for assisting former employees in their sexual harassment suit. According to Plaintiff, she agreed to speak with the attorney representing the plaintiffs suing defendant OHHC and as a result her employment was terminated. However, as Defendant noted in its summary judgment motion, the undisputed material facts demonstrate that Plaintiff did not speak to the attorney until after she had been terminated by Defendant. Plaintiff then responds, noting that while she did not talk to the attorney until later, she had informed the attorney she would agree to talk to him and had told one of her supervisors at Defendant OHHC that she had something to say.

Initially the Court notes that again this attempt to alter her claims or allegations this late in the lawsuit is not permissible. See Pater, 646 F.3d at 1299, and Evans, 936 F.2d at 1090-91. Further, even were the Court to consider the actions Plaintiff now alleges preceded the retaliatory conduct – that of speaking to Marvin Preston – Plaintiff's claim would still fail as the comments she states she made to Mr. Preston are insufficient to create or consist of protected activity. As the Tenth Circuit noted in Hinds v. Sprint/United Management Co., 523 F.3d 1187, 1203 (10th Cir. 2008), to qualify as protected activity, "the employee must

convey to the employer his or her concern that the employer has engaged in [an unlawful] practice." Here, Plaintiff's statement to Mr. Preston was simply that she had something to say and/or that one of the plaintiffs had told her that she liked black men. Neither of those comments were sufficient to apprise Mr. Preston or Defendant OHHC that she intended to express a concern that an unlawful employment practice had occurred. Accordingly, the Court finds that Plaintiff's claim for retaliation must fail and Defendant OHHC is entitled to summary judgment on this claim.

Defendants request that if the Court determines there is no liability under the ADA or Title VII, the Court should dismiss the state law claim and allow Plaintiff to pursue it in state court. The Court declines to adopt this approach as it would be a waste of resources for the Court, the parties, and any state court where the case was re-filed. 28 U.S.C. § 1367(c) clearly grants the Court continuing jurisdiction over the state law claim even after the federal claims are dismissed. The decision to retain jurisdiction and resolve the state law claim rests solely in the Court's discretion. See Carlsbad Tech., Inc., v. HIF Bio, Inc., 556 U.S. 635, 639 (2009). Here, the Court will retain jurisdiction and address the state law claim for intentional infliction of emotional distress ("IIED").

Plaintiff's IIED claim is premised on the comments by Defendant Preston about being crazy and needing to take her medication. The parties dispute whether the proper Defendant is Preston or OHHC. The Court finds that because the claim fails, resolution of who is the proper Defendant is unnecessary.

To establish her IIED claim, Plaintiff must plead and prove outrageous conduct and severe emotional distress. See Zeran v. Diamond Broad., Inc., 203 F.3d 714, 720 (10th Cir. 2000). In considering IIED claims, the Court acts as a gatekeeper, making an initial determination about the validity of Plaintiff's claim before sending it to the jury.

> The court, in the first instance, must determine whether the defendant's conduct may reasonably be regarded so extreme and outrageous as to permit recovery, or whether it is necessarily so. Where, under the facts before the court, reasonable persons may differ, it is for the jury, subject to the control of the court, to determine whether the conduct in any given case has been significantly extreme and outrageous to result in liability. Likewise, it is for the court to determine, in the first instance, whether based upon the evidence presented, severe emotional distress can be found. It is for the jury to determine whether, on the evidence, severe emotional distress in fact existed.

Breeden v. League Servs. Corp., 1978 OK 27, ¶ 12, 575 P.2d 1374, 1377-78 (footnote omitted).

Here, the Court finds Plaintiff has failed to plead facts demonstrating that Defendant Preston's actions were extreme or outrageous. While Preston's comments can be classified as distasteful, boorish, and lacking in common courtesy, the Court finds they are not so extreme and outrageous as to be beyond all possible bounds of decency. See Eddy v. Brown, 1986 OK 3, ¶ 7, 715 P.2d 74, 77:

> Conduct which, though unreasonable, is neither "beyond all possible bounds of decency" in the setting in which it occurred, nor is one that can be "regarded as utterly intolerable in a civilized community," falls short of having actionable quality. Hurt feelings do not make a cause of action under the tort-of-outrage rubric.

Plaintiff's IIED claim also fails the second element. What constitutes severe emotional distress is restricted. Indeed, in Zeran, the Tenth Circuit upheld the district court's finding of no IIED claim where the plaintiff had suffered anxiety attacks, received threatening and abusive telephone calls, sought medical care, and began taking a prescription drug for his anxiety. Zeran, 203 F.3d at 721. Courts have repeatedly held that the suffering must be extreme or utterly intolerable in a civilized society.

> "[I]n order to prevent the tort of outrage from becoming a panacea for all of life's ills, recovery must be limited to distress that is severe." In other words, the distress must be of such a character that "no reasonable person could be expected to endure it." Such distress is often accompanied by "shock, illness, or other bodily harm," but bodily harm is not a prerequisite for demonstrating severe emotional distress.

Daemi v. Church's Fried Chicken, Inc., 931 F.2d 1379, 1389 (10th Cir. 1991) (internal citations omitted). Here, although Plaintiff offers assertions that she suffered from various physical maladies as a result of Defendant's conduct, she has failed to offer non-conclusory allegations from which a reasonable jury could find that her distress was severe.

Finally, to the extent Plaintiff relies on Durham v. McDonald's Restaurants of Oklahoma, Inc., 2011 OK 45, 256 P.3d 64, the Court finds it distinguishable. In that case the comments made to the plaintiff and the resulting harm suffered by the plaintiff were significantly more severe. Accordingly, Defendant is entitled to judgment on Plaintiff's claim for intentional infliction of emotional distress.

**CONCLUSION**

For the reasons set forth herein, the Motion for Summary Judgment of Defendant Beverly Preston (Dkt. No. 34) and the Motion for Summary Judgment of Defendant Oklahoma Heritage Home Care, Inc. (Dkt. No. 39) are GRANTED. A separate judgment will issue.

IT IS SO ORDERED this 29th day of May, 2013.

ROBIN J. CAUTHRON
United States District Judge